UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JOSHUA BELLER, a minor, by his next Friend and mother, MELISSA WELCH, And MELISSA WELCH, Individually<br><br>Plaintiffs,<br>v.<br><br>HEALTH AND HOSPITAL CORPORATION Of Marion County d/b/a WISHARD MEMORIAL HOSPITAL d/b/a WISHARD AMULANCE SERVICE;<br>ST. FRANCIS HOSPITAL & HEALTH CENTERS,<br>And CLARIAN HEALTH PARTNERS d/b/a METHODIST HOSPITAL OF INDIANA , Inc.<br><br>Defendants. | )<br>)<br>)<br>)<br>)   CASE NUMBER: 1:03-CV-0889DFH-TAB<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DAMAGES

Plaintiffs Joshua Beller and Melissa Welch present their claim for personal injury damages as follows:

### IDENTIFICATION OF THE PARTIES

1. Joshua Beller and Melissa Welch are residents of Indianapolis, Marion County, Indiana.

2. Hospital and Health Corporation of Marion County d/b/a Wishard Hospital d/b/a Wishard Ambulance Service provides medical treatment at its hospitals and various clinics and through its ambulance service in

Indianapolis, Marion County, Indiana. At all times relevant, Wishard Hospital has been a participating hospital for purposes of 42 USC § 1395 cc, the Social Security Act.

3. Clarian Health Partners d/b/a Methodist Hospital of Indiana, Inc. provides medical treatment at its hospitals and tertiary centers in Indianapolis, Marion County, Indiana, and various other facilities. At all times relevant, Methodist has been a participating hospital for purposes of 42 USC § 1395 cc, the Social Security Act.

4. St. Francis Hospital & Health Services provides medical treatment at its hospitals in Indianapolis, Marion County, Indiana, Beech Grove, Marion County, Indiana, and Mooresville, Morgan County, Indiana, and various other facilities. At all times relevant, St. Francis Hospital has been a participating hospital for purposes of 42 USC § 1395 cc, the Social Security Act.

## JURISDICTIONAL ALLEGATIONS

5. This court has jurisdiction pursuant to 28 USC § 1331. Venue in the Southern District of Indiana is appropriate under 28 USC § 1391.

## FACTUAL ALLEGATIONS

6. On June 14, 2001, Ms. Welch was about 34 weeks pregnant with her unborn son Joshua. She felt her water break and felt the cord

protruding. Without delay Ms. Welch called her doctor's office (OB GYN Care Center), which call was forwarded to the triage unit at Methodist Labor & Delivery.

7. A triage nurse told Ms. Welch to call 911 immediately, which she did. The nurse then called back and talked with Ms. Welch until the ambulance arrived at which time the EMT got on the telephone with the nurse. A paramedic placed Ms. Welch on her back while another talked with the nurse. The paramedics then placed Ms. Welch on her hands and knees and placed her on a gurney and placed the gurney in an ambulance, apparently at the behest of the nurse on the telephone.

8. The ambulance was directed to the St. Francis Hospital in Beech Grove at the apparently at the behest of the Methodist nurse on the telephone. The ambulance took Ms. Welch to the St. Francis Beech Grove Hospital where she was taken into the Emergency Department and placed on a bed.

9. After having being placed on the bed, the ambulance driver was ordered to place Ms. Welch "back on the truck" by Dr. Stephanie Krits-Johnson, who was apparently the family practice resident on call. She explained that Ms. Welch must be moved yet again to the St. Francis South Hospital. One of the EMTs said it was an emergency. The resident said "we better hurry then." The resident got on the ambulance and said the

cord was dry and should be wet. Ms. Welch was still in the same position. Dr. Krits-Johnson dripped water on the cord.

10. Ms. Welch gave a history of broken water and prolapsed cord from the moment she contacted her doctor and his triage team, and at the time she called 911. She wasted no time getting help. There is no question her condition was an emergency in the happening—it required quick action to take the baby before permanent damage was done to him.

11. Unfortunately, the ambulance crew with instruction from the Methodist triage nurse, took their emergency patients Ms. Welch and Joshua to a hospital which apparently had discontinued delivering babies as a regular activity.

12. In fact, from the time the ambulance paramedics on the Wishard ambulance crew saw the prolapsed cord, they knew faced an emergency. They also knew Wishard Hospital had the facilities to deliver the baby on an emergency basis and was only minutes away.

13. Further, Methodist likewise had the facilities to deliver the baby on an emergency basis and was again only minutess away.

14. Despite the emergency, Wishard Ambulance took mother and baby away from help. There is some evidence that Beech Grove Hospital was contacted and told of the emergency, but incredibly accepted the transfer anyway.

4

15. By the time Ms. Welch arrived at Beech Grove South Campus, an hour of vital time had been lost. When he was finally delivered, Joshua had no heart rate and was not breathing. The lost time had left this baby severely and irreparably harmed.

16. Joshua was intubated, sent to the Neonatal Intensive Care Unit, and placed on a ventilator.

17. Joshua was transferred to Riley Hospital for Children where he sees a bevy of specialty physicians including developmental pediatricians, pulmonologists, and surgeons for various developmental and physical disabilities.

## CLAIM FOR DAMAGES

Plaintiff alleges that the defendant Wishard Hospital violated 42 USC § 1395dd, the Emergency Medical Treatment and Active Labor Act (hereinafter "EMTALA"), and in support of this claim alleges that:

18. Defendant Wishard Hospital through its ambulance service recognized that its patients Melissa Welch and her 34 week unborn baby Joshua with a prolapsed cord, were suffering an emergency medical condition. If for some reason they did not make this rather obvious conclusion, Wishard Hospital was required to provide plaintiff Melissa Welch and her baby an adequate medical screening examination to confirm or rule out an emergency medical condition. Once recognized, Wishard had a

legal obligation to provide appropriate medical treatment to stabilize the pair. In this case, the stabilizing treatment, delivery of the baby, was readily within the means of this hospital.

19. Methodist Hospital was in touch with the ambulance over the telephone, had the facilities to deliver Joshua and was only minutes away, but it was this Hospital's triage team that first directed the Wishard Ambulance to St. Francis Beech Grove. It could have rightly accepted transfer in a proper manner, but it did not. Rather, Methodist apparently recommended a transfer of mother and baby in an emergency medical condition to a facility that claimed it could not stabilize the patients. Methodist, too, violated EMTALA.

20. In violation of the duty imposed on defendant Wishard Memorial Hospital, the Hospital through its EMTs illegally transferred Ms. Welch and Joshua to the St. Francis Beech Grove Hospital, a hospital that apparently accepted the transfer of these emergency patients although upon arrival at the ER, St. Francis personnel claimed to lack the proper facilities to treat the patients.

21. After Ms. Welch had been moved to a bed inside the Beech Grove Hospital Emergency Department, a family medicine resident figuratively and literally pushed mother and baby back into the Wishard ambulance again in violation of the duty imposed on defendant St. Francis Hospital to stabilize these emergency patients.

22. The medically indicated treatment to stabilize mother and daughter was to deliver the baby as soon as possible. This treatment could have been provided in a timely manner at Wishard Hospital, as it should have, or at Methodist Hospital, or even perhaps at Beech Grove South Hospital

23. If Wishard Hospital and its Wishard Ambulance Service had complied with EMTALA, Ms. Welch and Joshua would have been taken to Wishard Hospital, the baby would have been delivered in minutes rather than an hour, and the Hospital would have provided medical treatment as required by EMTALA. Tragically, this was not the case, and Ms. Welch and her baby were bounced around from hospital to hospital until Joshua suffered damage to his brain from lack of oxygen.

24. Because of the failures of Wishard, Methodist, and St. Francis Beech Grove Hospital to comply with their legal duties, Joshua Beller has been seriously and permanently injured, has incurred and will continue to incur medical and hospital expenses, has experienced and will continue to experience extreme pain and suffering, mental anguish and emotional distress, and has and will continue to suffer loss of enjoyment of his life, for all of which he is entitled to recover under EMTALA.

25. Because of the failures of Wishard Hospital, Methodist Hospital, and St. Francis Beech Grove to comply with their legal duties, Ms. Welch has lost his child's love, care, affection, companionship, support, and

services for his lifetime, for all of which he is entitled to recover under EMTALA.

WHEREFORE, plaintiffs Joshua Beller, a minor, by his next friend, Melissa Welch, and Melissa Welch, individually, seek damages from the defendants Wishard Memorial Hospital, Methodist Hospital, and St. Francis Hospital in an amount sufficient to compensate fully and fairly for their injuries and for their other damages, for costs of this action, for attorney fees, and for all other damages appropriate under the circumstances.

                                                    Gerald W. Mayer
                                                    Attorney No.: 13719-49
                                                    Attorney for Plaintiffs

Gerald W. Mayer
4911 East 56th Street
Indianapolis, IN  46220-5719
Telephone: (317) 254-1443
Facsimile: (317) 254-1449